RIMÔN, P.C.
Ivan L. Tjoe (SBN 203420)
ivan.tjoe@rimonlaw.com
2029 Century Park East, Suite 400N
Los Angeles, California  90067
Telephone:    (213) 314-2938
Mobile:         (213) 447-2424

Attorneys for Plaintiff LuminUltra Technologies
Ltd.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUMINULTRA TECHNOLOGIES Ltd., a Canadian Corporation, | Case No.: |
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL FOR:** |
| v. | |
| ANITOA SYSTEMS, LLC, a California Limited Liability Company; and DOES 1 Through 25, inclusive, | 1. **BREACH OF WRITTEN AGREEMENTS;** |
| Defendants. | 2. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| | 3. **UNJUST ENRICHMENT;** |
| | 4. **DECLATORY RELIEF;** |
| | 5. **COMMERCIAL CODE §2711; AND** |
| | 6. **UNFAIR COMPETITION - B & P §17200** |

Plaintiff LuminUltra Technologies Ltd. (hereinafter the "Plaintiff" or "LuminUltra"), by and through their undersigned counsel, file this complaint against defendant Anitoa Systems, LLC (hereinafter the "Defendant" or "Anitoa") as follows:

**JURISDICTION AND VENUE**

1.   This court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332, in there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of pre-judgment interest, post-judgment interest and costs.

RIMÔN, P.C.
A Professional Corporation
Los Angeles

COMPLAINT

RIMÔN, P.C.
A Professional Corporation
Los Angeles

2.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a)(1) and (2) in that one or more defendants resided in this judicial district, and in particular, in the County of San Mateo, and a substantial portion of the events giving rise to Plaintiff's claims occurred in this district.

**PARTIES**

3.    Plaintiff LuminUltra Technologies Ltd. is, and all time mentioned herein was, a corporation organized and existing under the laws of New Brunswick, Canada with its principal place of business at 520 King Street, Fredericton, New Brunswick, Canada E3B 6G3.

4.    Defendant Anitoa Systems, LLC is, and all time mentioned herein was, a limited liability company organized and existing under the laws of California with its principal place of business at 149 Commonwealth Drive, Suite 1001, Menlo Park, California 94025.

5.    The true names and capacities of Defendants DOES 1 through 25, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  When the true names and capacities of these Defendants sued herein as DOES 1 through 25, inclusive, have been ascertained, Plaintiff will amend this Complaint to insert said names and capacities.

6.    Plaintiff is informed and believes, and on that basis alleges that at all times material to this action, each Defendant was acting as agent, servant, partner, and/or alter-ego of each of the remaining Defendants and, in connection with the matters alleged herein, was acting in the course and scope of such agency.  Plaintiff is informed and believe, and on that basis alleges that at all times material to this action, each Defendant, while acting as principal, expressly acted with the knowledge of the other Defendants and/or expressly directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the Defendants.

**FACTUAL ALLEGATIONS**

7.    Founded in 1995, LuminUltra is a biological diagnostic testing company widely recognized as a global leader in developing and supplying diagnostic testing solutions and reagents for environmental, industrial, and clinical applications.  Since March, 2020, LuminUltra

2

COMPLAINT

1    is also a key supplier of COVID-19 clinical testing reagents to the Government of Canada, testing

2    services to the U.S. Government, and also provides testing services to a number of companies

3    globally.

4        8.    Anitoa was one of the suppliers of qPCR test equipment used as part of the testing

5    solutions Plaintiff marketed, offered, and/or sold to its customers.  Plaintiff purchased

6    approximately seventy (70) qPCR machines similar to the units in dispute in this action from

7    Anitoa between 2018 and early 2020.

8        9.    A qPCR machine is widely used to rapidly make millions to billions of copies of a

9    specific DNA sample, allowing scientists to take a very small sample of DNA and amplify it to a

10   large enough amount to study in detail.

11       10.   During the onset of the COVID-19 global pandemic, Plaintiff identified two lucrative

12   markets that possessed an immediate and urgent demand for complete COVID-19 testing

13   solutions, which utilized the same qPCR machines Plaintiff had previously purchased from the

14   Defendant.  Specifically, these applications included the following opportunities:

15       a.   Point-of-Care Clinical Testing – As COVID-19 cases expanded suddenly and

16            exponentially, traditional centralized clinical diagnostic laboratories were stretched to

17            the limit.  The health care industry was seeking solutions that would put gold standard

18            diagnostic testing at the point of care (*e.g.*, directly at a senior care facility), a solution

19            in which Plaintiff was uniquely qualified possessing over twenty-five (25) years of

20            experience providing testing solutions in varied applied markets.  Plaintiff had the

21            ability to develop the testing kits including reagents, consumables and the methods but

22            required a provider of equipment to be used as part of the complete testing

23            solution.  Plaintiff drew up plans and made investments to market and sell complete

24            testing solutions that would include a branded LuminUltra qPCR machine with specific

25            reagents and consumables.  At this point in 2020, Plaintiff was in discussions with

26            various parties that would service hundreds of potential qPCR test locations that would

27            be running thousands of tests per week primarily at high-risk locations such as, and

28            again senior care facilities, and industrial sites.  The demand for this type of testing

RIMÔN, P.C.
A Professional Corporation
Los Angeles

3
COMPLAINT

solution would have translated into thousands of equipment sets and millions of tests which LuminUltra estimated would generate **$187,500,000.00** in total profits; and

b. <u>Environmental Surveillance</u> – Plaintiff previously developed solutions for the detection of the SASR-CoV-2 virus on surfaces, in the air, and in wastewater.  These prior test methodologies were put at or near sample collection sites for faster turnaround time.  Plaintiff determined during the onset of the pandemic it could deploy a similar testing strategy to quickly measure the spread and proliferation of COVID-19 so that communities could respond faster to potential cases using these non-invasive surveillance methods.  At this time, Plaintiff had brokered arrangements with the largest diagnostic testing laboratories and industrial hygiene companies in the world who were ready to deploy this solution as a service to their client bases.  This would have translated into hundreds of equipment sets and hundreds of thousands of tests per month which LuminUltra estimated would generate an additional **$37,500,000.00** in profits.

11.  Therefore, Plaintiff reached out to Defendant in or around May 2020 with a Request For Quote (hereinafter the "RFQ") for the supply of one thousand (1,000) qPCR machines pursuant to Defendant's published physical and performance specifications for its "**Maverick**" qPCR machines (hereinafter the "ANITOA'S SPECS").  Plaintiff reached out to Defendant to determine if it could supply one thousand (1,000) of its **Maverick** qPCR machines but branded as Plaintiff's "**GeneCountQ16**" qPCR machine.  (A true and correct copy of ANITOA'S SPECS are attached hereto and incorporated to this complaint as "**Exhibit 1**".)  Plaintiff advised Defendant at the time it issued the RFQ that Plaintiff required all of one thousand (1,000) of **GeneCountQ16** machines had to be shipped to Plaintiff by August 28, 2020.

12.  On or about June 12, 2020, Defendant responded to Plaintiff's RFQ with QUOTE NUMBER 2020061201 (hereinafter the "QUOTE").  Anitoa offered to provide LuminUltra with one thousand (1,000) of the GeneCountQ16 machines at a price of **$7,325.00 USD** per unit, plus shipping costs, wherein ***all*** units would be shipped by **August 28, 2020**.  Anitoa requested LuminUltra pay for the units as follows:

a. 1st *prepayment* by 6/12/2020 **$1,000,000**;

b. 2nd *prepayment* by 7/12/2020 **$1,000,000**;

c. 3rd *payment* upon delivering *entire order* **$1,000,000**;

d. Final *payment* 30-days after delivering *entire order*, **$4,325,000**.

e. Total amount, all in, was **$7,325,000.00 USD**, exclusive of shipping costs.

(A true and correct copy of the Quote 2020061201 is attached hereto and incorporated to this complaint as "**Exhibit  2**".)

13. On or about June 15, 2020, LuminUltra countered Anitoa's QUOTE and issued Purchase Order (hereinafter "P.O.") No. 5220 to purchase nine hundred (900) GeneCountQ16 qPCR machines *with* touchscreens at a price of $7,325.00 USD per unit, plus shipping costs, and one hundred (100) GeneCountQ16 qPCR machines *without* touchscreens at a price of $6,950.00 USD per unit, plus shipping costs, for a total purchase price, not inclusive of shipping costs, of **$7,287,500.00 USD**.  (A true and correct copy of the P.O. No. 5220 is attached hereto and incorporated to this complaint as "**Exhibit 3**".)  LuminUltra's P.O. No. 5220 restated the same "Delivery Schedule" Anitoa offered in its QUOTE and also restated "Payment schedule – as per Quote #2020061201."  In other words, P.O. No. 5220 restated that all one thousand (1,000) GeneCountQ16 qPCR machines needed to be shipped to LuminUltra by August 28, 2020 and per this schedule:

a. 150 units by August 7, 2020;

b. 250 units by August 14, 2020;

c. 300 units by August 21, 2020; and

d. 300 units by August 28, 2020.

(Id.)

14. Pursuant to the terms of P.O. No. 5220, LuminUltra paid Defendant $1,000,000.00 on June 16, 2020 and another $1,000,000.00 on July 20, 2020.  As gesture of good faith, LuminUltra also paid Defendant, on or about October 21, 2020, the third $1,000,000.00 installment even though Defendant had delivered at this point only and approximately four hundred thirty-four (434) of the one thousand (1,000) GeneCountQ16 machines LuminUltra ordered.

RIMÔN, P.C.
A Professional Corporation
Los Angeles

15.   As of December 31, 2020, Defendant still had not delivered all of the one thousand (1,000) machines ordered.  Instead, Defendants delivered six hundred ninety six (696) machines but approximately only one hundred sixty-five (165) of these machines actually worked and/or performed to ANITOA'S SPECS.  Of the approximately one hundred sixty-five (165) "working" machines, this number was later reduced as some of these units started to prematurely fail in operation and during subsequent testing that was jointly designed by Defendant and Plaintiff.  To date, Defendant managed to deliver less than one hundred sixty-five (165) working units, against the one thousand (1,000) machines overdue to Plaintiff by December 31, 2020 and in spite of Plaintiff's overpayment of $1,000,000.00.

16.   Indeed, on or about November 11, 2020, Defendant advised that it was recalling four hundred and forty (440) of the six hundred ninety six (696) machines it had delivered for repairs.

17.   Conceding that it had breached the terms of the parties' agreement (i.e. P.O. No. 5220), Anitoa agreed, on or about January 28, 2021, to additional terms to address and ensure all of the one thousand (1,000) GeneCountQ16 qPCR machines it committed to deliver to LuminUltra would meet and perform to ANITOA'S SPECS.  Anitoa agreed to and entered into the SUPPLY AGREEMENT on or about January 28, 2021 but the SUPPLY AGREEMENT had an effective date of January 22, 2021.

18.   The SUPPLY AGREEMENT included *inter alia* additional express terms requiring Defendant to do the following:

a.  "The warranty on each device shall be 18 months from the date of acceptance of each device by the Buyer."; and

b.  "The Supplier will make repairs (or replacement) to defective devices during the warranty period at no cost to the Buyer and within 15 business days of receipt.  The Supplier will cover freight charges related to warranty repairs or replacement."

19.   As consideration for and as an incentive for Anitoa to expeditiously provide LuminUltra with all one thousand (1,000) GeneCountQ16 qPCR machines that met and performed to ANITOA'S SPECS, LuminUltra paid Anitoa an additional $301,633 upon entry of the SUPPLY AGREEMENT.

COMPLAINT

1    20.  On or about June 15, 2021, Defendant recalled approximately an additional three hundred

2    twenty-one (321) units bringing the total recall to approximately seven hundred sixty (760) units.

3    21.  To date, LuminUltra has paid Anitoa a total of **$3,478,275.00 USD**.  To date, Anitoa has

4    delivered to LuminUltra a total of approximately two hundred sixteen (216) GeneCountQ16 qPCR

5    machines that meet and perform to ANITOA'S SPECS.

6    22.  Without the benefit of receipt of a majority of machines that met and performed to

7    ANITOA'S SPECS by Q3, 2020, Plaintiff missed its opportunity to be able to supply testing kits

8    to its Point-of-Care Clinical Testing customers and to its Environmental Testing customers.

9                                    **COUNT I**

10                        **BREACH OF WRITTEN CONTRACTS**

11                      **(AGAINST DEFENDANT AND DOES 1-25)**

12    23.  Plaintiff refers to paragraphs 1 - 22 in their entirety and hereby incorporate them by

13    reference as though fully set forth herein.

14    24.  On or about June 15, 2020, Defendant accepted Plaintiff's offer to purchase one thousand

15    (1,000) GeneCountQ16 qPCR machines on terms as set forth in P.O. 5220.  (**Exhibit  3**.)

16    25.  On or about January 28, 2021, Plaintiff and Defendant modified the terms of their

17    agreement to include the terms as set forth in the SUPPLY AGREEMENT.

18    26.  Plaintiff has fully performed and fully discharged its obligations and duties for each of

19    these two agreements.

20    27.  Plaintiff previously and repeatedly demanded Defendant to refund the **$3,478,275.00**

21    Plaintiff paid to Defendant to date and/or in the alternative perform as required by the P.O. 5220

22    and the SUPPLY AGREEMENT by delivering all one thousand (1,000) GeneCountQ16 qPCR

23    machines to Plaintiff the meet and perform to ANITOA'S SPECS.

24    28.  Despite Plaintiff's repeated demands, Defendant breached the two agreements by refusing

25    to refund the **$3,478,275.00** paid to date and/or in the alternative refusing perform as required by

26    the P.O. 5220 and the SUPPLY AGREEMENT by delivering all one thousand (1,000)

27    GeneCountQ16 qPCR machines the meet and perform to ANITOA'S SPECS.

28

RIMÔN, P.C.
A Professional Corporation
Los Angeles

29.  As a direct, actual and proximate consequence of Defendant's breaches of contact, Plaintiff has sustained and will sustain damages of no less than $1,000,000.00 exclusive of interest, costs and consequential damages.  The ultimate amount will be proven at trial.

## COUNT II

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (AGAINST DEFENDANT AND DOES 1-25)

30.  Plaintiff refers to paragraphs 1 - 29 in their entirety and hereby incorporate them by reference as though fully set forth herein.

31.   Within the agreements between Plaintiff and Defendant exist an implied covenant of good faith and fair dealing that no party will do anything to unfairly interfere with the right of any other party to receive the benefit(s) of the agreements agreed upon by the parties.

32.   Plaintiff entered into these agreements trusting that Defendant would, in good faith, abide by the terms of each deal with Plaintiff in good faith, and not do anything to deprive Plaintiff of the benefits agreed upon by the parties.

33.  Defendant benefited from Plaintiff's actions.

34.  As alleged above, Defendant breached its duty of good faith and fair dealing thereby depriving Plaintiff of the benefit(s) of the agreements agreed upon by the parties.

35.   As a direct, actual and proximate consequence of Defendant's breaches of contract, Plaintiff has sustained and will sustain damages of no less than $1,000,000.00 exclusive of interest, costs and consequential damages.  The ultimate amount will be proven at trial.

## COUNT III

### UNJUST ENRICHMENT

### (AGAINST DEFENDANT AND DOES 1-25)

36.   Plaintiff refers to paragraphs 1 - 35 in their entirety and hereby incorporate them by reference as though fully set forth herein.

37.  Pursuant to the parties' agreements, Defendant has received and benefitted from the use of the no less than **$3,478,275.00** Plaintiff paid to Defendant to date.

RIMÔN, P.C.
A Professional Corporation
Los Angeles

RIMÔN, P.C.
A Professional Corporation
Los Angeles

38.  Defendant received these benefits in violation of its agreements with Plaintiff and at Plaintiff's expense and detriment.

39.  Defendant would be unjustly enriched if it is permitted to retain these monies without delivering to Plaintiff a number of the GeneCountQ16 qPCR machines that meet and perform to ANITOA'S SPECS that equal in value the **$3,478,275.00** Plaintiff has paid to Defendant date.

40.  As a direct, actual and proximate consequence of Defendant's breaches of contract, Plaintiff has sustained and will sustain damages of no less than $1,000,000.00 exclusive of interest, costs and consequential damages.  The ultimate amount will be proven at trial.

## COUNT IV

### DECLARATORY RELIEF

### (AGAINST DEFENDANT AND DOES 1-25)

41.  Plaintiff refers to paragraphs 1 - 22 in their entirety and hereby incorporate them by reference as though fully set forth herein.

42.  Plaintiff seeks a declaration of its rights, duties, and obligations pursuant to the two written contracts referenced herein.

43.  Plaintiff also seeks a declaration of the construction and/or validity of these two agreements.

44.  An actual controversy therefore exists as to these matters such that a judicial declaration of the Parties' respective rights are required.

## COUNT V

### VIOLATION OF CALIFORNIA COMMERCIAL CODE §2711

### (AGAINST DEFENDANT AND DOES 1-25)

45.  Plaintiff refers to paragraphs 1 - 35 in their entirety and hereby incorporate them by reference as though fully set forth herein.

46.  In addition to failing to ship all one thousand (1,000) GeneCountQ16 qPCR machines the meet and perform to ANITOA'S SPECS by August 28, 2020, on or about January 4, 2022, Defendant repudiated the terms of both P.O. 5220 and the SUPPLY AGREEMENT.

RIMÔN, P.C.
A Professional Corporation
Los Angeles

47.   Pursuant to California Commercial Code §2711, Plaintiff is entitled to recover from Defendant both the purchase price Plaintiff paid to Defendants as well as the difference between the cost of cover and the contract price together with incidental and/or consequential damages pursuant to §2715.

48.   As a direct, actual and proximate consequence of Defendant's conduct, Plaintiff has sustained and will sustain damages including *inter alia* the purchase price of the non-conforming and defective qPCR machines, loss of productivity for Plaintiff's employees having to deal with the defective machines, loss of reputation and good will, loss of profits, and for having expended approximately twenty three million dollars **$23,000,000.00** purchasing unusable reagents and consumables that were intended to be used with the total of the one thousand (1,000) GeneCountQ16 qPCR machines Plaintiff ordered.  The ultimate amount will be proven at trial.

## COUNT VI

### VIOLATION OF CAL. UNFAIR COMPETITION LAW, B&P CODE § 17200, *et, seq.*

### (AGAINST DEFENDANT AND DOES 1-25)

49.   Plaintiff refers to paragraphs 1 - 48 in their entirety and hereby incorporate them by reference as though fully set forth herein.

50.   Defendant has engaged in unlawful and unfair business acts and/or practices in violation of California Bus. & Prof. Code § 17200, *et. seq*.

51.   Defendant violated section 17200, *et. seq.* when it *inter alia* breached the parties' written agreement and breached the respective implied warranties to Plaintiffs.

52.   As a result of Defendant's unlawful, unfair, acts and/or practices, as described above, Plaintiff has been prevented from *inter alia* being able enjoy, exploit, and/or profit from the parties' agreements.

53.   Plaintiff has sustained and will continue to sustain damages as a direct, actual and proximate consequence of Defendant's conduct, and are therefore entitled to appropriate relief pursuant to Bus. & Prof. Code § 17200, *et. seq.* including but not limited to restitution of improperly gained profits and prejudgment injunctive relief.

COMPLAINT

**PRAYOR FOR RELIEF**

WHEREFORE, Plaintiff LUMINULTRA TECHNOLGES LTD. prays for judgment in its favor and against Defendant Anitoa Systems, LLC as follows:

1.    For damages in amount to be proven at trial, but exceeding $1,000,000.00 exclusive of interest;

3.    For incidental and consequential damages in an amount to be determined by the trier of fact;

4.    For punitive damages in an amount to be determined by the trier of fact;

5.    For declatory relief pursuant to *Code of Civil Procedure* section 1060;

6.    Prejudgment injunctive relief;

7.    For prejudgment and post-judgment interest;

8.    For costs of suit;

9.    For attorneys' fees by operation of law, statute or contract; and

10.    For such other relief as the Court may deem just and proper.

Dated:  February 7, 2022                                    RIMÔN, P.C.

By:  _____
                                                    Ivan L. Tjoe
                                                    Attorneys for Plaintiff LuminUltra Technologies
                                                    Ltd.

RIMÔN, P.C.
A Professional Corporation
Los Angeles

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2　　　　Plaintiff LUMINULTRA TECHNOLGES LTD. hereby demands a trial by jury on all

3 claims so triable.

4

5 Dated:  February 7, 2022　　　　　　　RIMÔN, P.C.

6

7　　　　　　　　　　　　　　　　By: _____

8　　　　　　　　　　　　　　　　　Ivan L. Tjoe
　　　　　　　　　　　　　　　　　Attorneys for Plaintiff LuminUltra Technologies
9　　　　　　　　　　　　　　　　Ltd.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

COMPLAINT